## In re 263 WEST 38TH STREET CORPORATION.

District Court, S. D. New York.
Feb. 11, 1941.

T. C. P. Martin, of New York City, for debtor.

Low & Sokolski, of New York City, for petitioners.

Maass & Davidson, of New York City (Wilbur C. Davidson, of New York City, of counsel), for Baker, Evans & Co., Inc.

Herman N. Finkelstein, of New York City, for Milton M. Blumenthal and Rambee Corporation.

Edmund Burke, Jr., of Washington, D. C., and J. Anthony Panuch, of New York City (John F. Davidson, of New York City, of counsel), for Securities and Exchange Commission.

**HULBERT, District Judge.**

This is a proceeding for reorganization of the debtor under Chapter X of the National Bankruptcy Act, Title 11 U.S.C.A. § 501, et seq.

The petitioning creditors are owners and holders in the aggregate amount of $9,000 of first mortgage income bonds of the debtor and have interposed an answer praying that the court take jurisdiction and protect the rights of its stockholders.

The debtor is a corporation organized under the laws of the State of New York and is the owner in fee of the land and the 17-story loft building erected thereon, known as 263–271 West 38th Street, Borough of Manhattan, City of New York, in what is known as the "garment centre".

On October 1, 1940, the debtor defaulted in the payment of interest due on the mortgage covering said real property to secure said mortgage bond issue, and also defaulted in the payment of the real estate taxes assessed against said property by the City of New York. Thereupon the president and directors of the Manhattan Company (locally known as the Bank of Manhattan Company) trustee under said trust mortgage, instituted proceedings in the New York Supreme Court, County of New York, to foreclose the same. No receiver has been appointed nor has an application been made for such appointment, the debtor having previously assigned the rents of the premises to the plaintiff therein; no plan of reorganization under any New York State law has been prepared and filed in the New York State courts.

Baker, Evans & Co., Inc., a New York corporation, a holder of $84,000 principal amount of debtor's first mortgage income bonds filed an answer to the petition which, inter alia, challenge the good faith of this proceeding, but upon the hearing waived the opportunity to adduce any testimony, stating that such objection was based upon the prior proceedings pending in the State court and, because it is unreasonable to expect that a plan of reorganization of the debtor can be achieved in this proceeding.

Milton M. Blumenthal a holder of $4,500 in principal amount of first mortgage bonds, and the Rambee Corporation, a holder of $4,000 in principal amount of said bonds, appeared and support the contention of Baker, Evans & Company, Inc.

The Bank of Manhattan Company prays the dismissal of the proceeding in order that it may proceed with its foreclosure action.

The Securities and Exchange Commission has intervened and supports the petition for reorganization. .

The real property involved in this proceeding was formerly owned by the Bisjo Realty Corp., which was reorganized under the provisions of former Section 77B, 11 U. S.C.A. § 207, of the National Bankruptcy Act and a plan of reorganization was approved by a judge of this court in 1936.

The Bisjo Realty Corp., had outstanding $832,000 principal amount of first mortgage bonds, a second mortgage, a third mortgage and a fourth mortgage, various unsecured creditors and stock interests.

The approved plan of reorganization eliminated the holders of the fourth mortgage, unsecured creditors and the stockholders.

The holders of the first mortgage bond issue received new first mortgage bonds of the debtor as series "A" bonds in an amount equal to 50% of the first mortgage bonds surrendered and in addition thereto received common stock and voting trust certificates for first preferred stock of the debtor. Second preferred stock of the debtor was issued to the holders of the second and third mortgages. The debtor, in order to raise cash for operating expenses, also issued, as authorized by the plan, first mort-

gage bonds, series "B" and additional common stock; series "A" and series "B" bonds, for the purpose of this proceeding, may be assumed to be identical. Therefore the present set up is:

First Mortgage Bonds $420,000
First Preferred Stock 7904 Shares
Second Preferred Stock 500 Shares
Common Stock 8320 Shares

In addition to the outstanding bonds and accrued interest thereon at the rate of 6% per annum from April 1, 1940, and the unpaid realty taxes in the sum of $11,175, which became due Oct. 1, 1940, and interest thereon at the rate of 7% per annum, the material obligations of the debtor consist of an indebtedness represented by scrip certificates issued to the holders of bonds in lieu of interest due Oct. 1, 1938, in the sum of $70,120.90, which, of course, fall into the classification of unsecured claims.

This debtor became the owner of the premises 263 West 38th Street on Oct. 1, 1938, and fixed a value on its books for the land and building at $740,990. The property involved at that time was assessed by the City at $910,000. In a certiorari proceeding it has been reduced to $750,000, and in consequence, the debtor is entitled to a rebate of taxes to the extent of $18,000, of which $6,000 has been recently paid on account and the balance, it is expected, will be presently paid.

The assistant trust officer of the Bank of Manhattan Company, under date of January 13, 1941, submitted to petitioners' attorneys a statement from the managing agents of the property showing gross rents per annum amounting to $92,630 (with only one vacancy listed at $720) and concessions amounting to $1,366.68, leaving a balance of $90,543.32. The estimated annual expenses are $36,762.25; taxes $23,000.00, and interest on $420,000 at 6%, $25,200, which leaves a balance of $5,581.07, out of which expenses of administration and other miscellaneous expenses must be met.

It is alleged by the petitioning creditors, and not denied, that it is doubtful if the property will bring the amount of the mortgage upon a foreclosure sale, and that the trustee under the mortgage will not bid the property in to protect bondholders.

The answering and opposing bondholders rely upon Section 146, sub. 4, of the National Bankruptcy Act, 11 U.S.C.A. § 546, sub. 4, and contend that upon the facts as above briefly outlined, the petition should be dismissed because:

(1) It is obvious that a plan of reorganization cannot be effected;

(2) The prosecution of the prior proceeding pending in the Supreme Court of the State of New York will best serve the interests of the creditors.

Section 146, Title 11 U.S.C.A. § 546, provides, so far as material:

"Without limiting the generality of the meaning of the term 'good faith', a petition shall be deemed not to be filed in good faith if—

\* \* \* \* \* \* \*

"(3) it is unreasonable to expect that a plan of reorganization can be effected; or

"(4) a prior proceeding is pending in any court and it appears that the interests of creditors and stockholders would be best subserved in such prior proceeding."

The opposing creditors rely principally upon In re Brooklyn Trust Company v. Rembaugh, 2 Cir., 110 F.2d 838, and In the Matter of Blinrig Realty Corporation, 2 Cir., 114 F.2d 100.

In the Rembaugh case the state court proceeding had been instituted over two years prior to the filing of a Chapter X petition; the debtor had expressly agreed to a plan of reorganization filed by the New York Mortgage Commission, as trustee, and the Brooklyn Trust Company had thereafter been appointed trustee by the state court. Upon default by the debtor on payments called for under the state court plan, the trustee had commenced a foreclosure suit and a receiver had been appointed. The Circuit Court of Appeals [110 F.2d 840], held the petition was lacking in good faith because the debtor "could not escape from the consequences of the plan to which it had assented by simply filing a petition for reorganization in the federal court while the proceedings in the state court were still pending."

In the Blinrig Realty Corporation case, prior to filing a Chapter X petition, the debtor had unsuccessfully endeavored for over three years to reorganize in the state court, during which period a succession of events transpired, non-existent here. In reversing the order of approval of the petition, the court said [114 F.2d 102]: "After so much fruitless effort in the state court, something more than a change in tribunals was needed."

In re Ashwood Realty Corp., decided Feb. 24, 1939,[1] the debtor had been operating under a plan promulgated in a state court proceeding and this Court permitted the State Mortgage Commission to take steps to modify that plan in the state court proceeding rather than require it to accomplish this result through a new reorganization proceeding in the District Court.

It is to be observed, however, that Section 256 of the National Bankruptcy Act, 11 U.S.C.A. § 656, provides: "A petition may be filed under this chapter notwithstanding the pendency of a prior mortgage foreclosure, equity, or other proceeding in a court of the United States or of any State in which a receiver or trustee of all or any part of the property of a debtor has been appointed or for whose appointment an application has been made."

In the Matter of Castle Beach Apartments, Inc., as here, the debtor became the owner of the property following a previous reorganization, the trustee under the mortgage thereafter brought a foreclosure action following a default in the payment of interest on the bonds and a petition under Chapter X was filed before steps were taken in the foreclosure suit beyond the filing of the complaint. The District Court approved the Chapter X petition and its order was affirmed on appeal by the Circuit Court of Appeals (Second Circuit) in 113 F.2d 762.

Counsel for the opposing creditors points out that it was demonstrated to the satisfaction of the court in the Castle Beach Apartment case that a plan of reorganization was feasible and that additional funds would be available for the future needs of the operation of the property involved in that case; that objecting bondholders appeared only through the trustee who had not obtained the approval of the Court to act pursuant to the bankruptcy law, and asserts that had the bondholders appeared directly the decision in that case, even despite the proof of ability to reorganize the property, might have been different.

One counsel appearing for opposing creditors argues that more than 36%, and another argues that more than 40% of the bondholders are opposed to a reorganization in this court, which is entirely irrelevant at this stage of the proceeding.

No indication has been given with respect to the contemplated terms of reorganization; whether a plan can be prepared and submitted which is fair, feasible and equitable may best be determined after a hearing before one of the Referees in Bankruptcy, as Special Master. If such a plan is presented and approved by the judge, and submitted to the creditors and stockholders for their acceptance, Section 203 of the National Bankruptcy Act, Title 11 U.S.C.A. § 603, authorizes the court to inquire into the good faith of the acceptance, or failure to accept the plan by the holder of any claim or stock and, in the event of a finding of bad faith, may direct that such claim or stock be disqualified for the purpose of determining the requisite majority for the acceptance of a plan.

Moreover, all parties in interest, as well as the court, will have the benefit of what, I am sure, will be an impartial investigation and report by the Securities and Exchange Commission. The petition for a reorganization will be approved as filed in good faith. An order should be presented, to be settled on notice, fixing a date for hearing and the appointment of a trustee and such terms and conditions as may be appropriate with respect to his powers and duties, with a reference meanwhile to one of the Official Referees, as Special Master, to take testimony and report, so that upon the hearing date fixed in the order to be made, the court may be as fully advised as possible.

---

[1] No opinion for publication.