of the use of the property represented by the retained deposit.

The Court does not represent the Government in making orders of distribution in eminent domain proceedings. And payment into Court for the benefit of the property owner is usually treated as payment to him. United States v. Dunnington, 146 U.S. 338, loc.cit. 350, 13 S.Ct. 79, 36 L.Ed. 996. But the facts in the present case do not permit the unqualified application of those established rules. In the case cited the payment into Court was unqualified and actually for the use and benefit of the owners. The owners of a remainder interest did not intervene and the Court distributed all of the fund to the owners of a life estate. The Government fully complied with the statute in paying the money into Court and was relieved of any further responsibility. In the present case the Government paid the estimated compensation into Court and then successfully resisted the distribution of a portion of it to the property owners. The grounds upon which distribution of the entire fund were resisted, i. e. that the Government be protected in the event final judgments were for less than the amount paid into Court and the property owners were unable to return the deficiency, were entirely proper and furnished adequate justification for the exercise of the Court's discretion in complying with the Government's demand. But after the benefit which the Government sought has been realized and enjoyed it cannot logically maintain the position that the payment by the Government of the loss of that part of the full compensation occasioned by the Government's gain cannot be justified. The property owners are entitled to full compensation. That has been denied them at the instance of the Government and for the Government's benefit. The judgment will be modified to provide for interest on the retained amount.

The record discloses that the property owners involved in this motion were left in possession until November 1, 1939, and thereafter an order was made fixing the rent to be paid to the Government for the occupancy of the premises after November 1, 1939. The declaration of taking was filed June 15, 1939. To allow interest from June 15, 1939, would result in the owners having the use of the premises from that date until November 1, 1939, and also compensation for the loss of its use. Interest will therefore be allowed from November 1, 1939.

Since no question is raised concerning the propriety of the rate of interest which the motion seeks to have allowed, or that interest at six per cent per annum would not be fairly compensatory for the loss of the use of the movant's property, that rate will be applied. If there should be any dispute about this question, the parties will be given an opportunity to present evidence on the subject.

## In re MARINE HARBOR PROPERTIES, Inc.

District Court, S. D. New York.

Sept. 30, 1941.

Hughes, Hubbard & Ewing, of New York City (Curtiss Ely Frank and Orville H. Schell, Jr., both of New York City, of counsel), for Mortgage Corporation of New York.

Friedland & Friedland, of New York City (Arthur E. Friedland, of New York City, of counsel), for debtor.

George Rosling, of Brooklyn, N. Y., for Mortimer Rubenstein, as receiver.

Samuel Silverman and Maurice Rubinger, both of New York City, trustees, in person.

BRIGHT, District Judge.

This is an application by the Mortgage Corporation of New York as trustee, to vacate an order made herein on September 17, 1941, approving the petition of the above named debtor, filed for reorganization under Chapter X of the Bankruptcy Act, Title 11 U.S.C.A. §§ 501–676, under which trustees have been appointed and qualified, and to dismiss such petition. The ground of attack mainly is that the petition for reorganization was not made in good faith.

It appears without dispute that the secured indebtedness of the debtor consists of a first mortgage held by the Mortgage Corporation, amounting, with defaults as of October 1, 1941, to $399,814, of a second mortgage of $25,000, of a third and fourth mortgage upon each of which there is due not more than $2,000, and conditional sales contracts aggregating about $3,000, a total of $431,814; and there is unsecured indebtedness, the amount of which is not disclosed. The value of the real estate concededly does not exceed $350,000, it being assessed at $380,000.

■ The first mortgage was originally given to the Title Guarantee & Trust Company, and certificates were issued under it to about ninety holders, which certificates were guaranteed by the Bond & Mortgage Guaranty Company. The latter company becoming insolvent, its affairs were taken over by the New York Superintendent of Insurance, and the mortgage in question was reorganized under the New York Schackno Act, McK. Unconsol. Laws, § 1796 et seq., the plan being approved by the New York Supreme Court in Kings County, on November 24, 1934, and declared final on December 6, 1934, after approval by two-thirds in amount of the certificate holders. Under that plan, the mortgage was extended for three years to December 1, 1937, with interest at 6% to December 1, 1934, and thereafter at 5% to maturity.

Subsequently, the Mortgage Corporation was appointed, and is now acting as trustee pursuant to an order of the State Court, made December 6, 1938, which order further provided that the court should retain jurisdiction of the proceeding until the complete liquidation of the trust estate.

The first mortgage was not paid at its maturity, and on April 1, 1941, the debtor defaulted in the payment of interest and taxes; on May 1, 1941, foreclosure proceedings were begun in the State Court, and are now pending, in which action a receiver was appointed, who took possession of the property, and has since been collecting the rents therefrom and operating the same.

Negotiations for a further modification of the mortgage attempted on two occasions by the debtor, in which further extension of payment and reduction in interest were sought, were unsuccessful, the Mortgage Corporation declining each after submitting the same only to its Trust Committee. No submission of the proposed modification was made either to the court or to the certificate holders. The receiver estimates that the property is capable of earning approximately 6⅝% upon the first mortgage, and upon the argument, it was stated by his attorney that there was but one vacancy in the premises.

In opposition to the application, it is shown that the market in New York City

for certificates issued under the first mortgage in question is, at present, 50% of par; and it is contended that the reorganization in the State Court can only affect the certificate holders under the first mortgage, and cannot take into consideration the subsequent liens, as well as the unsecured creditors.

The decline in the value of the real property, the fact that the value of the certificates in the market is so much less than par, and the power of this court in any attempt to reorganize to consider the rights of all lienors and creditors, as seems to be the purpose of the Chapter X of the Bankruptcy Act, convince me that the application now made should be denied, and to require a finding that the original petition was filed in good faith. Certainly, the object of the Chapter is to make a fair and equitable application of the assets of the debtor, which cannot meet its obligations by payment in full as they mature, to an adjustment of its debts. Such an object cannot be attained in the State Court proceeding. It may be here. What plan may be presented cannot now be definitely ascertained. The Chapter contemplates an opportunity on the part of the trustees' in reorganization to present one, and certainly does not contemplate a reorganization for the sole benefit of any particular creditor, secured or otherwise. It does not provide for a dismissal of such proceeding because a single creditor opposes it, nor because such creditor contends that no plan can be presented.

If the first mortgage creditor is to be given a free hand, it is obvious, in view of the present depreciated value of the real estate, that not only will all creditors be wiped out, but also that the certificate holders will receive only a fraction of their investment. Can those certificate holders fare any better after a forced sale of the real estate than in this proceeding? There seems to be no question but that the debtor should be reorganized. The question is whether that should proceed in this court, where all creditors may be heard, or in the State Court, which has control over but one class of creditors. I do not think the time has yet arrived to decide that question, nor can it arrive until an opportunity has been given to learn what kind of a plan can be presented. At present but one creditor is being considered, and its foreclosure has been pending for four months without any apparent progress being made.

Four cases in this district seem to have marked out the bounds within which this application may be considered. In Brooklyn Trust Co. v. Rembaugh, 110 F.2d 838, the Circuit Court of Appeals for the Second Circuit reversed an order denying an application similar to this where the facts were almost parallel. No doubt was there found as to the jurisdiction of the District Court, nor, it was written, any substantial ground for attacking the exercise by the trial judge of discretion in approving the petition as filed in good faith within the broad meaning of that term. But it was there held that the debtor, after assenting to the plan in the State Court, could not escape from the consequences of the plan simply by filing a petition for reorganization in the Federal Court, while proceedings in the State Court were still pending. The distinction between that case and this, it seems to me, is that here the debtor has endeavored on two occasions to present modified plans for relief, but on each occasion, has been rebuffed by the trustee, and has had no opportunity to make application for the relief which obviously the situation requires. The Act, I think, contemplates the right on the part of the debtor to go to the certificate holders direct, for, otherwise, I cannot see the reason for Section 565 of Title 11 U.S.C.A.

In Re Castle Beach Apartments, 2 Cir., 113 F.2d 762, an order denying a motion similar to this was affirmed, and the facts there were quite similar, except that the debtor there had not been a party to any reorganization plan in the State Court; but citing Brooklyn Trust Co. v. Rembaugh, supra, it was held that if it had that alone would not have been adequate ground for a dismissal of the petition. The fact that 75% of the certificate holders indicated in that case that they would not approve any plan was no proof that such an expression of disfavor was obtained with the consent of the court pursuant to law. I think the inference is that those most interested should have the right to say whether or not the plan to be proposed would be satisfactory. It was further stated that there was no sufficient reason because the debtor might be shown to be insolvent, for deciding that the District Judge did not exercise sound discretion in approving the petition and refusing to dismiss; that it could not

be said that the attempt to reorganize was so hopeless that good faith was absent.

In Re Blinrig Realty Corp., 2 Cir., 114 F.2d 100, the order approving the petition filed under Chapter X was reversed. It was there said that good faith in the sense of a fair likelihood of success, in view of of the vain efforts to reorganize already made in the State Court, were needed to be shown prima facie at least in order to entitle the petition to approval. The efforts made by the debtor there were obviously unfruitful, so much so that the court concluded that there was no reasonable ground for believing that the debtor's creditors would agree to a plan with less favorable terms, or that the debtor could do any better in the proceeding under the Federal Act, than it had in the State Court.

There has obviously been no fair effort here to determine any such a thing. Each suggestion made by the debtor has gone no further than the Trust Committee of the Mortgage Corporation. What the creditors might do, particularly in view of the fact that certificates are selling at one-half their face value, and that the property is worth less in the market than the first mortgage, is most problematical. Consideration should be given to the possibility that new money may enter the picture, which prospect can be probed by any plan which the trustees may propose.

And, lastly, In re 263 West 38th Street Corporation, D. C., 37 F.Supp. 667, an order for reorganization was approved by Judge Hulbert in an opinion in which the foregoing cases were cited and discussed, and in which he wrote that no indication having been given with respect to the contemplated terms of reorganization, whether a plan could be prepared and submitted which would be fair, feasible and equitable, could best be determined after a hearing.

I think that under all the circumstances shown here, the trustees should be given an opportunity to submit such a plan, and that the application of the Mortgage Corporation should be denied. In re Mt. Forest Fur Farms, 6 Cir., 103 F.2d 69, certiorari denied, Merritt v. Mt. Forest Fur Farms, 308 U.S. 583, 60 S.Ct. 105, 84 L.Ed. 488.

Upon the argument, the receiver's counsel requested that if the application were denied, he be permitted to retain some amount of money as a possible backlog against the payment of his commissions and his attorneys' fees. I do not think

that is necessary. The order to be entered upon this motion can provide that the turning over by him of such moneys which he has in his possession, and his subsequent accounting, shall be without prejudice to his application for commissions and attorneys' fees.

Application denied. Settle order on notice.