**WHITE et al. v. PENELAS MINING CO.**
**No. 8947.**

Circuit Court of Appeals, Ninth Circuit.
July 24, 1939.

Geo. B. Thatcher, Wm. Woodburn, Wm. J. Forman, and Thatcher & Woodburn, all of Reno, Nev., for appellants.

Walter Rowson, of Reno, Nev., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appeal has been taken from an order denying petitions to intervene filed by appellants in a reorganization proceeding under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and appointing trustees for appellee corporation.

In 1931, one Gordon acquired a lease and option to purchase certain mining claims in Nevada. In and after 1934, appellant R. H. White purchased a half interest in the property, which was then operated as a partnership. On May 1, 1935, Gordon and White made an agreement whereby appellee corporation was to be formed under the laws of Nevada, the stock of which was to be issued to Gordon and White in equal amounts; for the purpose of providing treasury stock Gordon and White were to donate equal amounts of stock; White was to make loans to appellee; for each dollar White advanced

appellee, one share of treasury stock was to be issued to Gordon, and one share was to be issued to White, but the shares issued to Gordon were to be held by White as security for the advances made by him.

Appellee was organized in August, 1935. The by laws of appellee corporation provided: "The Board of Directors shall meet on the first Monday of every month at the office in Reno, Nevada, or whenever called together by the President upon notice given to each Director as hereinafter specified". The directors were White, Gordon and Rowson, the latter apparently being at one time an attorney for White.

Subsequent to May 1, 1935, appellants advanced to appellee a total of $140,000, a part of which, amounting to $102,000, became due and unpaid.

On June 1, 1938, appellee filed its petition to reorganize under § 77B of the Bankruptcy Act. From the petition it appeared that appellee's liabilities amounted to $173,449.86, of which $165,876.82 was owing appellants. The liabilities consisted of:

Principal of loans made by appellants .................... $140,000.00
Accrued interest on such loans    19,978.24
Officer's salary due White.....     5,898.58
Accounts payable ............     3,089.93
Wages payable ..............     2,388.98
Taxes payable ..............     2,094.13

The petition showed that appellee had sufficient cash on hand to pay all creditors but appellants. Attached to the petition was a certificate of Rowson, as secretary of appellee certifying that at a regular meeting of the directors held on May 2, 1938, at which meeting a quorum was present and acting, the resolution attached to the certificate was adopted. The resolution authorized filing of the petition. On June 1, 1938, the court below made an order approving the petition as filed in good faith, and continuing the debtor in possession of the property pending a hearing to be held on June 29, 1938.

Pursuant to leave of court, appellants filed a petition in intervention, alleging that the directors' meeting of May 2, 1938, was pretended, and that the petition for reorganization was not filed in good faith. It prayed that the petition for reorganization be dismissed, and for other relief, which we treat as a prayer for vacation of the order of June 1, 1938.

At the hearing, Gordon testified that the resolution above mentioned was in fact adopted on May 2, 1938. Rowson's testimony on that point is contradictory. It also appeared that on the property were 12,730 tons of ore assured, which at an expected profit of $5.50 per ton would amount to a total profit of $70,015. Between the 600 feet level and the 1,000 feet level, Gordon estimated that 30,000 tons of ore would be recovered, which, at the expected profit of $5.50 per ton, would amount to an additional profit of $165,000. The mining and milling machinery was carried on the books at a value of $125,795.50.

On July 9, 1938, the court below orally stated that the petition for reorganization would not be dismissed, that he would appoint three trustees—White, Gordon and one Schrader—without restrictions at that time, and

"The only suggestion I am going to make to the trustees is that the fundamental proposition to be carried out is the economical development of this property, with a view of payment to Mr. White in full of the money which he has advanced for development and to Mr. Gordon for his time and labor and devotion to the development of the property * * *

"* * * that will be the order of the Court at this time. The Petition is approved and the matter is referred to the three trustees named."

Thereupon, one of appellants' attorneys requested "that the court enter the order which the court has made, substituting Mr. Thatcher for Mr. White as one of the trustees * * *". This request was granted. Thereupon, the following colloquy between appellee's counsel and the court below occurred:

"Mr. Rowson: * * * Your Honor formerly stated that it was your Honor's idea that Mr. Gordon would be left in charge of operations; that is, as operating trustee. Now your Honor has not included that in the formal order.

"The Court: At this time I see no reason to make any change in the order.

"Mr. Rowson: Will that be made part of the formal order?

"The Court: No, I stated I would make no restrictions whatever at this time * * *"

On July 9, 1938, the clerk of the court below entered a minute order which re-

cited that appellee's petition was "sustained and granted" and appointing the three trustees as above mentioned. Appellants' petition was not mentioned. On July 13, 1938, an order was signed by the court, and filed, denying appellants' petition, appointing trustees and defining their powers in detail. Petition for appeal from the order of July 13, 1938, was filed in this court on August 9, 1938, and was granted on August 15, 1938.

■ A motion to dismiss has been filed by appellee on the ground that the order was both rendered and entered on July 9, 1938, and therefore the appeal was not taken within thirty days as required by 11 U.S.C.A. § 47(c) as it then stood [now section 48(a)]. The motion to dismiss is denied. The order of July 13, 1938, first passed on the request for dismissal. Neither in the court's rendition of the order or the minute order was such request mentioned. Insofar as the record discloses, the court might have made, and presumably it did make, provision for trustees until it later passed on the request for dismissal. We think the appeal was taken in time.

■ Appellants contend that the filing of the petition to reorganize was not authorized by the Board of Directors, and suggest that, because of the inconsistency of Rowson's testimony, the minutes "were written up and back-dated". Gordon's testimony that the meeting was in fact held is uncontradicted. The trial court orally stated that if there was any defect in the meeting it could be corrected "even now". While we do not express an opinion upon that point we think the trial court's result is not clearly erroneous in view of Gordon's testimony.

■ In this connection, it is asserted that the action taken at the meeting was invalid, because held without notice to White, and that the provision of the by laws required notice of the meeting. We do not so construe such provision. We think the provision requires notice of special meetings, but that no notice is required for regular meetings. The provision fixes the time of meeting, thus rendering notice unnecessary.

Appellants' principal contention is that the petition to reorganize was not filed in good faith.

■ It is first contended that there existed no probability of a reorganization, because 11 U.S.C.A. § 207(b) (5) provides that a plan which is not accepted by two thirds of the creditors must "provide adequate protection for the realization by them of the value of their interests" by one of four methods there specified. This provision requires that the plan be "completely compensatory". Francisco Bldg. Corporation, Limited v. Battson, 9 Cir., 83 F.2d 93; Security-First Nat. Bank v. Rindge Land & Navigation Co., 9 Cir., 85 F.2d 557, 561, 107 A.L.R. 1240. It is therefore argued that complete compensation is impossible because there is no assurance that the estimated ore may be found below the depth of 600 feet. In addition to Gordon's testimony concerning the likelihood of such ore, a consulting mining engineer likewise testified that while no one could testify as to the existence of the ore, he saw no reason why it should not be there. The testimony is sufficient to show a reasonable probability. At any rate we cannot say that it is impossible. In addition, no plan has been presented. It may be that when it is presented, appellants may approve thereof.

■ It is also contended that the sole purpose of the proceeding was to hinder and delay creditors. Of course such a proceeding nearly always hinders and delays creditors. If that were the sole purpose, without any reasonable probability of success in reorganizing, it might be that the proceeding should be dismissed. Here, we think the proof does not disclose such a purpose. While appellee frankly admits that all it is seeking is an extension of time for payment to appellants, there is a reasonable expectancy of rehabilitation, if appellee is given an extension of time to pay appellants. In addition, if the expected ore is found, the stockholders have a substantial equity in the property. No reason appears why they should not have the opportunity to discover whether they do or do not have an equity.

■ It is further contended that the trustees are permitted to speculate at the hazard of the creditors in development work below 600 feet. Such fact does not now appear. No doubt the court below will protect appellants against any such contingency, but no such question is now presented because the court's order does not so provide, and nothing in the record indicates that such action is threatened.

■ The suggestion that the order merely permits Gordon and Rowson to maintain

control of the corporation is not borne out by the order. The trustees are in control, subject to the supervision of the court, not Gordon or Rowson.

Nothing in the record discloses any apparent or probable injury to appellants by allowing the order of the court below to stand. If additional ore is uncovered, appellants' chance of recovery will be enhanced. If such ore is not uncovered appellants will have all the security they now have. The only possible injury of which appellants might complain by a present recognition of the propriety of the order of the court below is the possibility of wasteful expenditures in an attempt to uncover such ore, but since the trustees in control under the order of the court below, are wholly within the supervision of that court, we think such possibility of injury is one which can only arise when authority for such expenditures is sought from the court below.

We think that at the present time it cannot be said that the petition to reorganize was not filed in good faith.

Affirmed.