## MARINE HARBOR PROPERTIES, INC. *v.* MANUFACTURERS TRUST CO., TRUSTEE, ET AL.

No. 24. Argued October 16, 19, 1942.—Decided November 9, 1942.

---

Mr. *Arthur E. Friedland* for petitioner.

Mr. *Chester T. Lane,* with whom *Solicitor General Fahy* and *Messrs. Richard S. Salant, John F. Davis, Homer Kripke, Morton E. Yohalem, George Zolotar,* and *Mortimer Weinbach* were on the brief, for the Securities and Exchange Commission; and *Mr. Charles E. Hughes, Jr.,* with whom *Mr. Curtiss E. Frank* was on the brief, for the Manufacturers Trust Co., Trustee, respondents.

By special leave of Court, *Mr. Benjamin Heffner,* Assistant Attorney General of New York, with whom *Messrs. John J. Bennett, Jr.,* Attorney General, *Henry Epstein,* Solicitor General, *John F. X. McGohey,* Assistant Attorney General, and *Mr. Edward F. Keenan* were on the brief, for the State of New York, as *amicus curiae,* urging affirmance.

*Messrs. Martin A. Schenck, Samuel Kramer, Carl J. Austrian, Clarence F. Corner,* and *George J. Gillespie* filed a brief on behalf of certain charitable institutions, as *amici curiae,* urging affirmance.

Mr. Justice Douglas delivered the opinion of the Court.

The question in this case is whether the Circuit Court of Appeals was in error in holding that a debtor's petition filed by petitioner under Ch. X of the Bankruptcy Act (52 Stat. 883, 11 U. S. C. § 501) was not filed in "good faith."

The debtor's sole asset is an apartment building in New York City which is subject to a first mortgage of $370,000. This mortgage is held by the respondent, Manufacturers Trust Co. (successor to The Mortgage Corporation of New York), as trustee for certificate holders. There are also junior mortgages and other claims, including an unspecified amount of unsecured indebtedness. Concededly the property of the debtor is worth less than the amount of the first mortgage debt. The first mortgage was originally created in 1931 and was held by Title Guarantee and Trust Co., which issued and sold to the public certificates of participation, guaranteed as to principal and interest by Bond and Mortgage Guarantee Co. The latter company became involved in financial difficulties in 1933 and was taken over by the Superintendent of Insurance of New York for rehabilitation.[1] Pursuant to provisions of the Schackno Act (N. Y. Laws 1933, c. 745), the Superintendent of Insurance promulgated, in 1934, a plan for the readjustment of the rights of the certificate holders in the mortgage, by which the mortgage was extended to December 1, 1937 and the interest reduced. Over two-thirds of the certificate holders consented to the plan, and the debtor joined in the extension agreement. The New York court approved it. In 1935 the New York Mortgage Commission succeeded the Superintendent of Insurance as administrator of certificated bonds and mortgages.

---

[1] See generally, Report of Commissioner George W. Alger to the Governor of the State of New York, Oct. 5, 1934.

N. Y. Laws 1935, c. 19, c. 290.   That Commission,[2] in 1938, proposed the designation of the Mortgage Corporation of New York as trustee of the bond and mortgage in the instant case, under a declaration of trust granting the trustee broad and comprehensive powers.   This proposal was consented to by over two-thirds of the certificate holders and approved by the New York court.   The order of the court provided "that this Court, having assumed jurisdiction of this proceeding, shall retain jurisdiction hereof until the complete liquidation of the Trust Estate and the termination of the trust; and the Trustee, or any other interested party herein, may apply at the foot of this Final Order upon such notice as the Court may direct for such other and further relief as to the Court may seem just and proper."

The principal of the first mortgage was not paid at its extended maturity in 1937.   But until April 1, 1941, the debtor made all other payments due under the 1934 extension agreement.   At that time the debtor defaulted in payment of interest and taxes.   Both before and after that default the debtor and the trustee negotiated for an agreement of further extension and modification.   But no agreement between them could be reached and no further proposal for a modification or extension of the mortgage was presented to the state court or to the certificate holders. On May 1, 1941, the trustee instituted foreclosure proceedings in the state court.   A receiver was appointed, who took possession.   In September 1941 the debtor filed its voluntary petition under Ch. X of the Bankruptcy Act. An *ex parte* order approving the petition and appointing trustees was obtained.   Shortly thereafter the mortgage trustee moved to vacate that order and to dismiss the debtor's petition on the ground that it was not filed in

[2] On the activities of the Commission, see Annual Report 1939, N. Y. Leg. Doc., No. 94.

"good faith." That motion was denied. 41 F. Supp. 814. The Circuit Court of Appeals reversed, one judge dissenting, 125 F. 2d 296. We granted the petition for certiorari because of the importance in the administration of the Bankruptcy Act of the problems involved.

Every petition under Ch. X must state, *inter alia,* "the specific facts showing the need for relief under this chapter." § 130 (7). Sec. 141 provides that the judge shall enter an order approving a debtor's petition "if satisfied that it complies with the requirements of this chapter and has been filed in good faith, or dismissing it if not so satisfied." Sec. 146 defines "good faith" and provides in part:

"Without limiting the generality of the meaning of the term 'good faith', a petition shall be deemed not to be filed in good faith if—

. . . . .

"(4) a prior proceeding is pending in any court and it appears that the interests of creditors and stockholders would be best subserved in such prior proceeding."

The federal bankruptcy power is, of course, paramount and supreme and may be so exercised by Congress as to exclude every competing or conflicting proceeding in state or federal tribunals. *Kalb* v. *Feuerstein,* 308 U. S. 433. In fashioning Ch. X Congress, however, did not go so far. While the pendency of prior proceedings in state or federal courts does not bar the filing of a petition under Ch. X (§ 256), Congress in effect directed the bankruptcy courts not to approve petitions under Ch. X in such cases unless it appeared that the interests of creditors and stockholders would not be best subserved in the prior proceedings. And it put the burden on the petitioner to make that showing. The Report of the House Judiciary Committee states that the purpose of § 146 (4) was to "stop the removal of prior pending cases from other courts where the interests of creditors and stockholders would be better served by retaining and continuing the prior proceedings." H. Rep.

No. 1409, 75th Cong., 1st Sess., p. 42. Sec. 146 represents a codification of some of the interpretations which the courts had given the words "good faith" in proceedings under § 77B. S. Rep. No. 1916, 75th Cong., 3d Sess., p. 27. Thus the necessity of showing "a need for the machinery of 77B as an essential in accomplishing a reorganization because other procedures were either unavailable or more cumbersome and expensive" led courts to find an absence of "good faith," in the sense that no "need for relief" had been established, where 77B was sought to be employed by a debtor as "a mechanism for preserving equities at the expense of creditors." See Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees, Securities and Exchange Commission, Pt. VIII, p. 94 (1940).

In view of that history, it seems clear that, when a prior proceeding is pending, a petitioner's showing of "need for relief" under Ch. X, required to be contained in every petition by the express provisions of § 130 (7), must demonstrate that at least in some substantial particular the prior proceedings withhold or deny creditors or stockholders benefits, advantages, or protection which Ch. X affords. In absence of such a showing, the "need for relief" has not been established and the District Court is not enabled to make an informed judgment on the "good faith" issue.

The Circuit Court of Appeals in this case, as in *Brooklyn Trust Co.* v. *Rembaugh,* 110 F. 2d 838, held that the debtor's petition was not filed in "good faith," since it was seeking to escape the jurisdiction of the state court to which it had voluntarily submitted itself. But that is not the test which Congress has provided in § 146 (4). That provision requires the bankruptcy court to inquire whether "the interests of creditors and stockholders" would be better subserved in the prior proceedings or

under Ch. X. That the desire of the petitioner to escape the prior proceedings is immaterial to that inquiry is supported not only by the language of § 146 (4) but also by the fact that § 256 expressly sanctions the filing of petitions under Ch. X although prior proceedings are pending. To disqualify a petitioner under Ch. X merely because he had in some way participated in the prior proceeding would effect a substantial impairment of § 146 (4), since it would be the exception rather than the rule where both the debtor and the creditors had not taken some part in the prior proceedings. Furthermore, the issue as to the adequacy of the prior proceedings as compared with Ch. X is the same whether the petition is filed by creditors or by the debtor. All petitions, whether filed by the debtor or by others, must show the "need for relief" (§§ 130–131); and in every case the bankruptcy court must be satisfied that the petition has been filed in "good faith." §§ 141–144.

We are of the opinion, however, that the debtor did not sustain the burden which the federal statute places on a petitioner. So far as the "interests" of stockholders are concerned, it is not apparent that the equity owners would be denied in the state foreclosure proceedings benefits, advantages, or protection which Ch. X would afford them. Admittedly the property is worth less than the amount of the first mortgage indebtedness. Under the rule of *Northern Pacific Ry. Co.* v. *Boyd,* 228 U. S. 482, and *Case* v. *Los Angeles Lumber Products Co.,* 308 U. S. 106, a plan of reorganization would not be fair and equitable which in such circumstances admitted the stockholders to participation, unless the stockholders made a fresh contribution in money or in money's worth, in return for "a participation reasonably equivalent to their contribution." *Case* v. *Los Angeles Lumber Products Co., supra,* p. 121. That rule obtains under Ch. X as well as under its predecessor, § 77B. There is no suggestion in the record

that the equity owners desire to make a contribution on that basis, and that, unless they are allowed to do it under Ch. X, they will be barred. All that the record shows is an affidavit by one Silverman that, "if the creditors desire liquidation of their claims on the basis of present actual values rather than on the face amount of their claims," $50,000 in cash could be raised. Ch. X would not permit such a dilution of creditors' interests. Hence, such a showing does not establish on behalf of the stockholders that "need for relief" which § 130 (7), read in light of § 146 (4), requires. In fact, the approval of the petition on that ground would be giving the equity owners a nuisance value wholly unjustified by the reorganization standards which are incorporated into Ch. X.

The District Court, however, concluded that it was in the interests of all the creditors that the Ch. X petition be approved. It noted that the market value of the certificates was far under par and that there were lienors and creditors, other than the first mortgage certificate holders, with which the bankruptcy court, but not the state court, could deal. If there were a showing, for example, that the property was worth more than the amount of first mortgage indebtedness and it appeared that that excess value would be lost to the junior interests in the state proceedings, or that the state proceedings were less adequate by reorganization standards than the bankruptcy court to protect such interests, approval of the petition clearly would be justified whether filed by the debtor or by creditors. But no such showing was made. Hence it was not established that continuation of the state proceedings would deny the junior creditors any benefits which Ch. X would afford them. Approval of the petition on the grounds advanced by the District Court could be made only under the composition theory of reorganization, which Ch. X, like § 77B, rejected in favor of the full priority rule of the *Boyd* case. See *Case* v. *Los Angeles*

*Lumber Products Co., supra,* p. 119, n. 14. That rule protects the rights of senior creditors against dilution either by junior creditors or by equity interests. See *id.,* p. 123; *Consolidated Rock Products Co.* v. *Du Bois,* 312 U. S. 510, 525–526, 529–530.

There remains the contention that it was in the "interests" of the certificate holders to have the proceedings transferred to Ch. X. In this connection, much emphasis is placed on numerous safeguards contained in Ch. X, which this Court reviewed in *Securities & Exchange Commission* v. *United States Realty & Imp. Co.,* 310 U. S. 434, 448–450. And it is asserted that comparable safeguards are wholly or largely lacking in proceedings under the Schackno Act. Those considerations would be highly relevant and persuasive if this were a case of the usual reorganization proceeding dealing with more than one class of securities under the older procedures which Ch. X was designed to improve and supplant. See *Securities & Exchange Commission* v. *United States Realty & Imp. Co., supra,* p. 448; H. Rep. No. 1409, 75th Cong., 1st Sess., pp. 37 *et seq.* Then the safeguards afforded by Ch. X would have special significance in protecting the respective classes of investors against improvident, unfair or inequitable adjustments, compromises, and settlements— steps which are basic to the reorganization process but which in selfish hands led to much abuse. H. Rep. No. 1409, 75th Cong., 1st Sess., pp. 37 *et seq.* But here the machinery of the state which is being used is the foreclosure proceeding, which, so far as appears, has been invoked on behalf of the certificate holders alone. Presumptively, the result of the foreclosure will be an appropriation of the assets of the debtor for the benefit of the certificate holders exclusively. There is no showing that the foreclosure proceedings have been conducted in such a way as to jeopardize the interests of the certificate holders contrary to the design of Ch. X. There is no showing

that assets subject to the payment of the certificates are being neglected. Thus it is not shown that the claim against the guarantee company is not being pursued or that its collection could better be handled in proceedings under Ch. X. There is no showing that the machinery employed or available in the state foreclosure proceeding to safeguard and protect the interests of those creditors *after* the sale is not comparable to that contained in Ch. X for the consummation of plans which are not only fair but feasible. § 221 (2). In view of the burden on a petitioner to make the showing required by § 130 (7) and § 146 (4), the bankruptcy court is not warranted in assuming, without more, that a state foreclosure proceeding, instituted for and on behalf of the first mortgage creditors exclusively, is inadequate, measured by Ch. X standards, to protect their interests. The contrary course would result in Ch. X making greater inroads on prior proceedings than § 130 (7) and § 146 (4) indicate was the purpose.

*Affirmed.*