## In re EMBASSY CO.

No. 11039.

District Court, E. D. Missouri, E. D.

Feb. 5, 1945.

Ben Shifrin, of St. Louis, Mo., for movant.

Hyman G. Stein, of St. Louis, Mo., for debtor.

Jos. H. Grand, of St. Louis, Mo., for Indenture Trustee, Boatmen's Nat. Bank.

HULEN, District Judge.

This matter is now before the Court on motion to dismiss, filed by creditor, holder of one $500 bond of the debtor corporation.

The Embassy Company, a Missouri corporation, on November 20, 1944, filed its petition seeking relief under Chapter X (that portion relating to corporate reorganizations) of the Chandler Act, Secs. 501–676, Title 11 U.S.C.A. The petition was approved on November 21, 1944. The indebtedness involved was over $250,000. A trustee was appointed. The trustee, as directed, took charge of debtor's property, which is an eight story seventy-eight unit apartment building, located at Union and Washington Boulevards, St. Louis, Missouri. A trustee's report of his investigation of debtor's affairs and a list of debtor's creditors has been filed in conformity with Sections 167 and 164 of the Act. January 18, 1945 was fixed as the date for the hearing of objections to the qualifications of the trustee. No questions are raised as to procedure.

On January 17, 1945, a motion to dismiss these proceedings was filed by the holder of a $500 First Mortgage Bond, and same was submitted on January 18th. No evidence was submitted in support of the motion, each of the parties relying on the facts as the same appear from documents on file in this proceeding to support their different positions.

The motion does not purport to be a controverting answer under Section 137 of the Act. It does not deny any of the allegations of fact contained in debtor's petition. As we understand movant's contention, it is that debtor's petition was not filed in good faith and that debtor's petition fails to show any need for Chapter X relief; that, on the contrary, a Chapter X proceeding will be an unnecessary and useless expense to debtor's bondholders, who, by virtue of their existing contractual rights, can, if unmolested by these proceedings, provide their own solution of the difficulties that beset them.

The facts are these: The debtor corporation was organized and took title to the property in question pursuant to a previous reorganization in this Court, entitled, "In the Matter of The Koplar Company," No. 7636. Pursuant to the Plan, debtor issued its First Mortgage Income Bonds to mature December 1, 1944, in the principal amount of $544,000, same being exchanged par for par for bonds in the same amount theretofore issued by the Koplar Company. There now remains outstanding $460,900 of debtor's income bonds, held by 617 bondholders. Debtor's stock consists of no par value common stock. There was issued 13,600 shares, to three voting trustees under a Voting Trust Agreement, which shares are still held in their names. The stock was deposited with the Boatmen's National Bank of St. Louis, as depositary, and there was issued to the bondholders Voting Trust Certificates representing forty per cent of the stock, at the rate of one share for each $100 in principal amount of bonds. These certificates were denominated Series A Voting Trust Certificates. They were attached to the bonds and were void if detached before maturity, but may be dealt with separately after maturity or December 1, 1944. Voting Trust Certificates denominated Series B, representing the remaining sixty per cent of debtor's stock, were issued to preferred stockholders and unsecured creditors of the Koplar Company and are now held by 225 certificate holders. The Voting Trust Agreement provides that upon default in the payment of the bonds when due on December 1, 1944, the stock represented by the Series B Voting Trust Certificates shall be delivered to the holders of the then outstanding bonds and that the rights, claims and interests of the

holders of the Series B Voting Trust Certificates to the capital stock of the debtor shall cease and terminate. The Voting Trust Agreement was to terminate December 1, 1944, the maturity date of the bonds, and upon such termination, the voting trustees shall, upon surrender of outstanding Voting Trust Certificates, distribute the capital stock, as provided in the trust instrument.

The voting trustees on January 16, 1945, filed in these proceedings a petition requesting instructions with respect to the distribution of debtor's stock under the Voting Trust Agreement. An order was entered on January 18, 1945, that action on this petition be deferred and the stock of debtor be continued held by the Boatmen's National Bank, as depositary, pending further order of the Court. Thus far there has not appeared in these proceedings any holder of a Series B Voting Trust Certificate.

From the report of the trustee's investigation it appears that debtor has no general unsecured creditors other than current operating expenses, which are presently being paid by the trustee pursuant to the order of November 21, 1944, appointing such trustee.

It is movant's position that the foregoing provisions of the Stock Trust Agreement were intended to obviate the necessity of any future reorganization; that if debtor's stock be delivered to the bondholders they will then own and control the debtor corporation and that the prior judgment in the Koplar Company reorganization limits the rights of the parties to their contractual remedies so as to preclude Chapter X relief. By the express provisions of Section 146(4) of the Act a petition shall be deemed to have been filed in bad faith if it appears that "a prior proceeding is pending in any court and it appears that the interests of creditors and stockholders would best be subserved in such prior proceeding," but such provision can have no application here for the reason that the proceedings for the reorganization of the Koplar Company have been finally concluded and are no longer pending.

■■■ An examination of the files in the Koplar case shows that by the order of February 20, 1937 approving the plan, the Court retained jurisdiction "over all matters in connection with the reorganization proceedings which have not been heretofore determined and which are not herein determined." Thereafter in the final decree of the Court of September 24, 1937 the Court found that "the modified amended plan of reorganization heretofore confirmed by the Court has now been fully and completely executed, carried out and accomplished." The Court then decreed "that the proceedings in this Court in the above entitled cause be and the same are hereby terminated and finally closed." We find there was not at the time of filing the present petition, a prior proceeding pending. Mere participation in a prior proceeding does not bar subsequent relief under the Chandler Act. This proceeding can be in good faith even if there were a pending proceeding, if the interests of the parties can best be served in the pending proceeding and it appears they would not be best served in the prior proceeding. (Marine Harbor Properties, Inc., v. Manufacturer's Trust Co., 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 64.) Having in mind that "one of the purposes of § 77B [11 U.S.C.A. § 207] (and the same is true of Chapter X) was to avoid the consequences to debtors and creditors of foreclosures, liquidations, and forced sales with their drastic deflationary effects," (Case v. Los Angeles Lumber Products Co., 308 U.S. 106, loc. cit. 124, 60 S.Ct. 1, loc. cit. 11, 84 L.Ed. 110) the undenied allegations of Debtor's petition are relevant. After pleading the facts with respect to the Stock Trust Agreement substantially as here stated, debtor alleges that it "does not have sufficient funds and has no means of borrowing or otherwise procuring sufficient funds with which to pay its outstanding income mortgage bonds which will mature and become due December 1, 1944 * * *. That upon default * * * the Trustee may and upon written request of the holders of five per cent (5%) in principal amount of the bonds then outstanding * * * shall sell at public auction * * * all or any part of the property * * *. That there is grave danger that said Trust Indenture and Chattel Mortgage will be foreclosed with great and irreparable damage to creditors and stockholders"; that "the nature of petitioner's assets is such and their value so great that it appears to be impossible at present to realize the full value by a sale or in any manner other than by * * * reorganization" and that "such a reorganization can be carried out most economically and expeditiously pursuant to Chapter X of said Act."

An examination of the Trust Indenture securing debtor's income bonds discloses that, the indenture trustee, as alleged by debtor, upon default may, and upon written request of five per cent of the bondholders, shall, foreclose. The indenture contains no provision for extension of bonds after maturity and it was conceded by counsel for movant, during oral argument, that unanimous consent of all bondholders would be required. The delivery of debtor's stock to the bondholders, as provided in the Stock Trust Agreement, would not extricate debtor from its financial difficulty. It would still have outstanding past due bonds in the amount of $460,900 in the hands of 617 bondholders.

Movant calls attention to a provision of the Trust Indenture authorizing the indenture trustee to buy in the property at foreclosure by bidding up to the full amount of the bonds, after which the trustee is authorized to hold the property for the benefit of the bondholders. It is provided, however, that if this be done and the property be not sold within five years, the indenture trustee shall form a corporation or trust and distribute the interests therein ratably to the bondholders. The indenture trustee has already come into these proceedings by filing herein on November 29, 1944, its petition for authority to pay interest due December 1, 1944, which petition was granted. Having participated in this proceeding and having made no objection to it and, on the contrary, by its counsel at the hearing on the motion to dismiss, having indicated its approval of these proceedings, it would appear that the indenture trustee is willing and desirous that these proceedings supersede any of the rights conferred upon it by the trust indenture and to be relieved of the duties therein imposed. This is significant because under Section 126 of the Act the indenture trustee is a proper party to bring such a proceeding as this. It is not beyond the realm of probability that if this proceeding were dismissed that the indenture trustee would promptly file another.

The stock trustees, by filing their petition for instructions herein, have indicated an intention not to distribute the debtor's stock without the protection of a court decree. We understood counsel for the indenture trustee to represent, on the hearing of this motion, that it does not recognize a lack of interest in the beneficiaries (preferred stockholders and unsecured creditors of the Koplar Company) of the Series B Voting Trust Certificates. Although notice of these proceedings has been given to all the bondholders and the holders of Series A and Series B Voting Trust Certificates, yet no objections have been voiced by anyone save the movant, who is the holder of a $500 bond. Distribution of the debtor's stock to the bondholders will not eliminate or extend the mortgage or automatically make the bondholders the owners of the property. It seems to the Court obvious that some legal proceedings, of the present character, are unavoidable.

■■ Granting the motion to dismiss would limit the debtor and its bondholders, absent some other court proceeding, to the remedies provided for in the Stock Trust Agreement and the trust indenture. Movant earnestly insists that this is precisely what the bondholders should be relegated to. The law is otherwise. Chapter X proceedings contemplate that two-thirds of the bondholders can work out a solution of their problems and coerce the others, with court approval. In re Prudence Bonds Corporation, 2 Cir., 75 F.2d 262. These proceedings make available to bondholders relief not available under the Stock Trust Agreement or the trust indenture, namely an extension of the matured bonds, and all of the flexible provisions of Chapter X. There is no showing that the debtor's officers (who are also stock trustees) did not exercise a reasonable judgment in causing debtor to file its petition in these proceedings. There has been no showing before this Court that debtor's petition has been filed in bad faith. On the record presented, the Court finds it was filed in good faith.

■ Movant's counsel suggests that the bondholders ought not to be deprived of the opportunity of attempting to come to an agreement among themselves. The ruling here made is without prejudice and does not preclude the filing and consideration of a subsequent motion to dismiss based on an agreement reached by all the bondholders, and fair to them, which would obviate the necessity of further proceeding with this reorganization.

## Order

Motion to dismiss debtor's petition and the proceedings herein is overruled.