### In re CAPITAL FOUNDRY CORPORATION.

### No. 46229.

United States District Court
E. D. New York.

April 7, 1949.

Zalkin & Cohen, of New York City, for trustees.

Nathaniel L. Goldstein, Atty. Gen., of State of New York (Wendell P. Brown, Sol. Gen., of Albany, N. Y., and Francis R. Curran and George Grau, Asst. Attys. Gen., of counsel), for Industrial Commissioner.

John P. McGrath, Corp. Counsel, of New York City (Isaac C. Donner, Bernard H. Sherris and Janet Lewin, all of New York City, of counsel), for claimant City of New York.

GALSTON, District Judge.

The trustees of the Debtor having filed a proposed plan of reorganization, objec-

tions thereto were filed on behalf of the United States, the State of New York and the City of New York, at a hearing held pursuant to Sec. 169 of the Bankruptcy Act, 11 U.S.C.A. § 569. It is their contention that the proposed plan is not fair and equitable, for as a result the inferior claims of general creditors will be paid before the tax creditors are fully compensated in that the plan provides for payment of interest not to the date of payment of the claims, but only to the date of the filing of the petition.

A review of some of the early proceedings had in this matter will be helpful to the disposition of the issues raised. The Debtor filed its petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., on March 2, 1945. On the same day the petition was duly approved as properly filed, and no objections were raised that it was not filed in good faith. The continued operation of the business having been deemed necessary by the War Department for the war effort, the trustees operated the Debtor's business for several months.

However, on May 23, 1945, the trustees obtained an order to show cause why the business of the Debtor should not be discontinued as of May 31, 1945, and that it be adjudicated a bankrupt. Following an interim hearing on the motion, on June 28, 1945, the trustees reported that they had not received any offer or plan of reorganization. At that hearing it was urged by counsel for the War Department, and for all of the government agencies involved, that since the business was to close down, it was desirable "to catch the market before it declines, and we are right up against, as we in the Army know, a real Army surplus disposal problem." In consequence the Army requested that there be a deferment of adjudication and that the property of the Debtor be sold.

Consequently, instead of ordering a liquidation in straight bankruptcy, authority for liquidation under Chapter X was found in Re Loewer's Gambrinus Brewery Co., 2 Cir., 141 F.2d 747, and Country Life Apartments, Inc., et al. v. Buckley, 2 Cir., 145 F.2d 935.

Thereafter the assets were sold and, of course, the business of the Debtor was no longer carried on by the trustees.

During the intervening period, from July 1945 to date, the trustees have been active in recovering from the United States tax refunds totaling $448,918.63, of which $86,-646.25 were received in cash, $255,368.66 were applied by the United States to the payment of tax claims, and the sum of $106,903.72 is being held by the Treasury Department subject to a claim of off-set. The long apparent delay in presenting a plan of reorganization was occasioned by the fact that until this recovery by the trustees there was not sufficient money in the estate to submit any plan of reorganization. Though labeled a plan in reorganization, what the trustees actually present is a plan in liquidation. That being so the decision of the Supreme Court, rendered March 7, 1949, in City of New York v. Louis H. Saper, as Trustee in Bankruptcy of Spot Light Productions, Inc., State of New York v. Leonard H. Carter, as Trustee in Bankruptcy of Union Fabrics, Inc., and United States of America v. Leonard H. Carter as Trustee in Bankruptcy of Union Fabrics, Inc., 69 S.Ct. 554, 556, is conclusive here. Mr. Justice Jackson found that the bankruptcy statute contained no provision repudiating the rule stopping interest at bankruptcy. Nor were tax claims an exception. The opinion recites:

"Section 63, sub. a(1), 11 U.S.C. § 103, sub. a(1), 11 U.S.C.A. § 103, sub. a(1), allows interest on judgments and written instruments only to date of bankruptcy. Section 63, sub. a(5), 11 U.S.C. § 103, sub. a (5), 11 U.S.C.A. § 103, sub. a(5), allows interest only to that date on debts reduced to judgment after bankruptcy. No provision permits post-bankruptcy interest on other claims in general or tax claims in particular. Section 57, sub. j, 11 U.S.C. § 93, sub. j, 11 U.S.C.A. § 93, sub. j, forbidding allowance of governmental penalties or forfeitures permits allowance of losses sustained by the acts penalized, with actual costs and 'such interest as may have accrued thereon according to law.' However, on its face this appears to delimit even such allowable debts as of the date of bank-

ruptcy and to allow no more interest than does § 63 with respect to the claims there specified. Moreover, there is no interest except that which accrues according to law —it is exactly such interest that the 'fundamental principle' cuts off as of bankruptcy. Section 57, sub. n, 11 U.S.C. § 93, sub. n, 11 U.S.C.A. § 93, sub. n, requires governmental claims to be proved in the same manner and within the same time as other debts and only for cause shown may a reasonable extension be granted. Tax claims are treated the same as other debts except for the fourth priority of payment, § 64, sub. a, 11 U.S.C. § 104, sub. a, 11 U.S.C.A. § 104, sub. a, and the provision making taxes nondischargeable, § 17, 11 U.S.C. § 35, 11 U.S.C.A. § 35. But each of these sections is silent as to interest."

The "absolute priority rule" will not apply in this case. In the Chapter X proceeding cases in which the Supreme Court has applied this rule, the plans proposed provided for rehabilitation and reorganization of the debtor and a preservation of going-concern values, as distinguished from a winding-up process and a distribution of assets as in ordinary bankruptcy. See Marine Harbor Properties, Inc., v. Manufacturer's Trust Co., 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 64; Group of Institutional Investors et al. v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co., 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959. This is not a case in which any new money is put into the so-called plan, nor does the plan show any provision for stockholders. Consequently such authorities as Northern Pacific Railway Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931; Case v. Los Angeles Lumber Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110, and Consolidated Rock Products Co. v. DuBois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982, do not apply, for they establish merely the precedence to be accorded creditors over stockholders in reorganization plans.

I re-emphasize the fact that the plan can only by a figment of the imagination be termed one in reorganization. It is an absolute liquidation, with all the physical assets sold, no new company to take over even a dubious good will. Consequently, if the plan submitted is fair and equitable, it is immaterial that the sale of the Debtor's property preceded the plan of reorganization; nor is it necessary to dismiss the proceeding under Chapter X and proceed with bankruptcy, because such sale makes the proceeding the equivalent of a liquidation in bankruptcy. Patent Cereals v. Flynn, 2 Cir., 149 F.2d 711. The objections, therefore, to the plan based on failure to allow interest to the time of payment are rejected.

However, in the case of the City of New York, a special situation exists. On February 21, 1946, the City of New York filed two claims in this proceeding, one for administrative expenses in the principal tax sum of $847.01 (sales tax) and a second for $798.52 (business tax) plus interest, totaling $1,723.49. On December 30, 1946, an agreement was entered into with the trustees that the claim be reduced to $1,241.51, which sum was paid by the trustees

A second claim was in the sum of $6,194.59, for business and sales tax and interest thereon for the period prior to March 3, 1945. The agreement with the trustees reduced this claim to $5,356.10, inclusive of interest to December 15, 1946. Apparently the stipulation and agreement entered into provided that the claim of $5,356.10 shall bear "further interest on the principal sum thereof, to wit $4,562.10, at the rate of six (6%) per cent. per annum from December 15, 1946 until the date of payment."

It would seem that the trustees had entered into an advantageous contract, and I see no reason why, since there was the give and take recited therein, the agreement should be disturbed because of the recent Supreme Court ruling referred to supra, limiting interest to the filing of the petition.

The stipulation and agreement between the City and the trustees was well within the power and authority vested in the trustees. See In re Prudence Co., Inc., 2 Cir., 98 F.2d 559, certiorari denied Stein v. McGrath, 306 U.S. 636, 59 S.Ct. 485, 83 L.Ed. 1037.

In all other respects the plan is deemed fair, equitable and feasible, and complies with Sec. 216 of the Bankruptcy Act. Settle order on notice.