406 F.2d 803
 WACHOVIA BANK AND TRUST COMPANY, Appellant,
v.
Charles E. DAMERON, III, Trustee of the Estate of Cabana
Club Apartments, Inc., Appellee.
In the Matter of CABANA CLUB APARTMENTS, INC., Debtor.
 No. 12472.
 United States Court of Appeals Fourth Circuit.
 Argued Nov. 1, 1968.
Decided Feb. 5, 1969.
 
 Hubert Humphrey, Greensboro, N.C. (McLendon, Brim, Brooks, Pierce & Daniels, Greensboro, N.C., on brief), for appellant.
 Arthur O. Cooke, Greensboro, N.C. (Cooke & Cooke, Greensboro, N.C., on brief), for appellee.
 Before SOBELOFF, WINTER and BUTZNER, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 Wachovia Bank & Trust Co. appeals from an order of the district court denying its motion to dismiss a petition for reorganization under Chapter X of the Bankruptcy Act (11 U.S.C. 501 et seq.) filed by Cabana Club Apartments, Inc. The appeal raises the narrow issue of whether the debtor's petition complied with Chapter X and was filed in good faith within the meaning of 146(3) and (4) of the Act (11 U.S.C. 546(3) and (4)).[1] We affirm the district court's denial of the motion to dismiss.
 
 
 2
 The debtor obtained from Wachovia a construction loan to build an apartment in Greensboro, North Carolina. It received through Wachovia a commitment for a long-term financing from the Aetna Life Insurance Company. On May 10, 1966, before construction began, the debtor executed its note, secured by a first trust, in the sum of $640,000 payable to Wachovia in monthly installments of $4,566.07, beginning April 1, 1967. Simultaneously, Wachovia, Aetna, and the debtor executed a 'buy and sell' agreement for the assignment of the note to Aetna upon completion of construction.
 
 
 3
 Differences between Wachovia and the debtor culminated in Wachovia's declaring the loan in default on May 30, 1967 and demanding accelerated payment of the disbursed proceeds of the loan in the sum of approximately $632,500. On July 20, 1967 Wachovia authorized the trustee to sell the property, but before the foreclosure sale, the debtor filed its petition under Chapter X. The district court restrained the sale, appointed a trustee, and referred the case to the referee in bankruptcy, as special master. The court adopted, with minor exceptions, the findings and conclusions reported by the referee. It accepted his recommendation to deny the motion to dismiss, but rejected his recommendation to tax costs and attorney's fees against Wachovia.
 
 
 4
 Wachovia contends that the debtor did not construct the project according to the plans and specifications; that the note is in default because the debtor did not pay installments due in April, May, and June 1967; that the debtor defaulted in its obligations undertaken to secure financing by failing to pay all costs of construction when the project was finished, by failing to provide good title insurance, and by failing to grant a first lien on chattels which are serviceable in the operation of the apartment. Contrary to Wachovia's allegations, the referee found that the project was completed in accordance with the plans and specifications on May 17, 1967. It was then 80% Rented. At the time of the hearing, he found, the apartments were 100% Rented with good prospects for substantial occupancy in the future. He estimated the annual net income at $25,000 to $30,000 after servicing secured debt and paying all operating expenses. He reported the fair market value of the project was $900,000. The secured debt consists of Wachovia's $640,000 first lien and a $33,000 second trust. Unsecured indebtedness consists of $21,900, which the referee treated as a capital contribution, and about $52,000 due on construction costs. All unsecured creditors are willing to accept payment over a period of time.
 
 
 5
 The referee also found Wachovia's note was not in default. He held that the date for payment of the initial installment was extended to July 1, 1967, and at that time, the debtor tendered a check for principal and interest which was refused. In the meantime, Wachovia had received without protest, in accordance with an understanding reached by the parties, interest payments in April, May, and June 1967. Since the institution of this suit, the trustee, without prejudice to Wachovia, has been making the installment payments.
 
 
 6
 The principal difficulty confronting the debtor is its inability to pay or settle construction claims in the approximate amount of $52,000.[2] These claims caused exceptions in the title policy and prevented the debtor from giving a first lien on the chattels. While Aetna's commitment was conditioned upon the debtor's payment of all construction costs, Aetna had the option to waive this requirement. The referee found that Wachovia, however, did not offer the note to Aetna to determine whether it would accept or reject the loan, but instead, without justification, unilaterally called the note and ordered the foreclosure sale.
 
 
 7
 Wachovia argues that its opposition to any plan of corporate reorganization[3] conclusively proves impossibility of effecting a plan and consequently establishes lack of good faith. Three cases in this circuit have dealt with the effect of lienholders' opposition on the issue of good faith. In Arey & Russell Lumber Co. v. American Nat'l Bank & Trust Co., 201 F.2d 508 (4th Cir. 1953), the background of previous proceedings and the petition in the Chapter X proceeding showed that the only purpose of reorganization was to secure an extension of indebtedness which the lienholder opposed. The court recognized that further proceedings would be fruitless and dismissed the petition. On similar grounds a petition was dismissed in Leas v. Courtney Co., 261 F.2d 13 (4th Cir. 1958). Nevertheless, in the absence of conclusive demonstration of futility found in such exceptional cases as Arey and Leas, creditor opposition is not controlling. This is made clear in Janaf Shopping Center, Inc. v. Chase Manhattan Bank, 282 F.2d 211 (4th Cir. 1960), where creditor opposition expressly was held not to be determinative, but instead was weighed along with other factors that had a bearing upon the possibility of successful reorganization.
 
 
 8
 The inability to effect a plan of reorganization that characterized Arey, Leas, and Janaf does not appear at this stage of these proceedings. The completion of the project without major difficulties and its successful operation indicate reasonable prospects for a workable plan. The principal impediment appears to be the rise of interest rates,[4] but this foretells a difficulty, not an impossibility. The district court properly concluded the trustee should have an opportunity to work out a plan 'even though opposing interests claim in advance that any plan proposed will be futile.' 6 Collier on Bankruptcy P6.09 at 1043 (14th ed. 1965).
 
 
 9
 Wachovia also complains that the referee's conclusions are predicated upon wrongfully deferring payment of its 20-year note. We do not read the report and the confirming order so narrowly. The referee outlined alternative proposals to demonstrate the feasibility of a plan. He first suggested that Wachovia could be paid in full by arranging other long-term financing. He also suggested paying Wachovia according to the terms of the note as a non-accepting creditor under 216(7) of the Act (11 U.S.C. 616(7)). But a plan has not yet been formulated, and the Act does not sanction our consideration of the referee's suggestions in lieu of a plan. After the trustee had presented a plan, it will be time enough to consider its merits and legality. At this stage of the proceedings, it is sufficient to hold that there is a reasonable expectation that a plan can be effected. Neither the petitioner nor the trustee is required to prove at the outset of the proceedings 'the fairness, feasibility or equity of any particular plan or possible plans.' 6 Collier on Bankruptcy P609 at 1041 (14th ed. 1965).
 
 
 10
 It is unnecessary at this time to determine whether Wachovia properly initiated foreclosure proceedings. Even if default be assumed, the district court acted neither erroneously nor arbitrarily in deciding that creditors and stockholders would not be served best by a foreclosure sale. Liquidation by forced sale furnished no assurance that all liabilities could be paid. In contrast, the referee reported reorganization reasonably could be expected to achieve this end. Although foreclosure might bring enough to pay the balance due on the first and second liens, jeopardy to junior creditors justified the district judge's conclusion. See Marine Harbor Properties v. Manufacturing Trust Co., 317 U.S. 78, 86, 63 S.Ct. 93, 87 L.Ed. 64 (1942) (dictum).
 
 
 11
 The order of the district court is affirmed and this case is remanded for further proceedings.
 
 
 
 [1]
 Section 144 of the Act (11 U.S.C. 544) states:
 'If an answer filed by any creditor, indenture trustee, or stockholder shall controvert any of the material allegations of the petition, the judge shall, as soon as may be, determine, without the intervention of a jury, the issues presented by the pleadings and enter an order approving the petition, if satisfied that it complies with the requirements of this chapter and has been filed in good faith and that the material allegations are sustained by the proofs, or dismissing it if not so satisfied.'
 Section 146 (11 U.S.C. 546) provides in part:
 'Without limiting the generality of the meaning of the term 'good faith', a petition shall be deemed not to be filed in good faith if--
 '(3) it is unreasonable to expect that a plan of reorganization can be affected; or
 '(4) a prior proceeding is pending in any court and it appears that the interests of creditors and stockholders would be best subserved in such prior proceeding.'
 
 
 [2]
 About $7,500 undisbursed funds and a $6,400 commitment fee furnished a possible source of partial payment. The debtor contests about $11,000 of the claims. Thus, the amount needed to discharge the claims ranges from about $28,000 to $39,000 depending on the determination of the contested claim. The debtor was unsuccessful in borrowing $50,000 to pay the claims because the holder of the second trust declined to subordinate to the proposed loan
 
 
 [3]
 Section 179 of the Act (11 U.S.C. 579) requires a reorganization plan to be acceptable to 'creditors holding two-thirds in amount of the claims filed and allowed of each class.' Wachovia holds all first lien indebtedness and more than two-thirds of all claims
 
 
 [4]
 From the time of the financing commitment in October 1965 until the hearing, interest rates increased for this type of loan from 6% To 7 or 7 1/4%, according to uncontroverted findings of the referee