**TEXACO INC., a corporation, Plaintiff-Appellant,**

v.

**The LIBERTY NATIONAL BANK & TRUST COMPANY OF OKLAHOMA CITY, Defendant-Appellee,**

**Public Leasing Corporation, Interpleaded Defendant-Appellee.**

**No. 72-1005.**

United States Court of Appeals, Tenth Circuit.

Aug. 1, 1972.

J. Frederick Lawson, Tulsa, Okl., for plaintiff-appellant.

John W. Swinford, Oklahoma City, Okl., for defendant-appellee.

Before HILL, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

This appeal is from a summary judgment granted in favor of Liberty National Bank and Trust Company of Oklahoma City (Bank), and Public Leasing Corporation (Public Leasing) against Texaco Inc. (Texaco). In this diversity suit Texaco sought to recover the sum of $23,230.10, representing the face amount of a cashier's check issued by the Bank to Texaco as payee, and on which the Bank stopped payment. Public Leasing was joined as an interpleaded defendant on motion of the Bank by an ex parte order.

The facts are clear and uncontroverted. On March 17, 1971, Public Leasing was indebted to Texaco on an open account in the amount of $77,293.10 for the purchase of gasoline, tires, automotive accessories, and other petroleum products. On that same day Public Leasing tendered a check drawn on its account at the Bank in the amount of $23,230.10, postdated to March 30, 1971, payable to Texaco in partial payment. Texaco held the check until some time prior to 2:00 p. m. on March 29, when it then presented the check to the Bank for payment. The Bank stated that since the check was dated March 30, it could not be negotiated at that time, but that if the check were presented after 2:00 p. m. that same day, it would then make payment, representing to Texaco that at that time it would officially be doing March 30 business. Later that same day Texaco again presented the check at the Bank's drive-in facility for payment. The Bank paid the Public Leasing check by issuing its own cashier's check in the amount of $23,230.10 payable to Texaco.

When the cashier's check was later presented by Texaco to the Bank for payment, the Bank refused to honor it on the grounds that it had been issued by inadvertence and mistake. The Bank reasoned that prior to the payment of the check issued by Public Leasing to Texaco, Public Leasing had placed a stop payment order with the Bank, but that knowledge of the stop payment did not reach the drive-in facility until after the check had been paid and the Bank's cashier's check had been issued by mistake. The Bank's action in stopping payment on its cashier's check was in accord with an agreement dated March 31, 1971, entered into between itself and Public Leasing, whereby the Bank agreed to restore the sum of $16,675.00 to the account of Public Leasing, and Public Leasing agreed to hold the Bank harmless by virtue of the agreement. This agreement was supported by a security agreement executed by Public Leasing in favor of the Bank involving 200 Dayton truck tires. The sum of $17,675.00 had been debited to the account of Public Leasing when the Bank had been informed that its cashier's check had been negotiated to a holder in due course. That sum was not sufficient, of course, to cover its loss if the Bank should be legally compelled to pay the cashier's check. Subsequently, the Bank restored these funds to the Public Leasing account in reliance upon the "hold harmless" agreement and the tires pledged.

On April 29, 1971, this action was instituted by Texaco against the Bank to recover on the cashier's check. The Bank on June 1, 1971, filed its answer alleging that issuance of its cashier's check was the result of mistake and inad-

vertence. The Bank also sought to interplead Public Leasing on the ground that the presence of Public Leasing is required for the granting of complete relief. The Bank made no claim to the funds in its own right. It pleaded as a simple stakeholder who was in danger of being subjected to double liability. The Bank sought a final determination as to whether Public Leasing or Texaco was entitled to the funds. An ex parte order of the United States District Court on June 1, 1971 joined Public Leasing as an interpleaded defendant.

In the meantime, however, on April 23, 1971, six days prior to Texaco's filing of the above suit against the Bank, Public Leasing had filed a petition in the United States District Court for an arrangement under Chapter XI of the Bankruptcy Act. Contemporaneously therewith, the judge in bankruptcy, United States District Judge, Luther Bohanon, entered an "Order Staying Suits Against Debtor" upon the specific application of Public Leasing, praying for a stay of suits against it. The Bankruptcy Court judge proceeded to order that "it further appearing that the rights of creditors will not be prejudiced by requiring an adjudication of their claims on the merits in this Court, . . . that all persons be, and they hereby are enjoined and stayed until final decree herein from commencing or continuing any suit against Public Leasing Corporation, the above named debtor, other than a suit to enforce a lien upon its property." Texaco filed its proof of claim for $77,293.10 in the Public Leasing bankruptcy proceeding on June 10, 1971, in which it specifically sought to reserve its rights against the Bank for failure to honor the cashier's check. The following statement was made a part of its claim:

"That there are no set-offs or counterclaims to the debt or liability except debtor will be entitled to a set-off in the amount of $23,230.10 in the event Texaco, Inc. recovers and collects judgment for said amount in Case Civ–71–268 now pending in this Court."

Thereafter on June 26, 1971, Public Leasing filed its objection to the Bank's interpleader. It contended that the postdated check given by Public Leasing to Texaco was within four months of the filing of the petition for arrangement, and that Public Leasing had stopped payment by delivery of a written stop payment order to the defendant Bank on March 29, 1971. Public Leasing contended that its check had been issued "to the Plaintiff (Texaco) as part payment of an antecedent obligation." Specifically, in its motion, Public Leasing contended that the order entered by the Bankruptcy Court staying suits against Public Leasing was a valid order authorized by the Bankruptcy Act, designed to prevent all interference with the property of Public Leasing during the pending bankruptcy proceedings by enjoining all creditor suits except those secured by liens. Texaco is an unsecured creditor. The motion contended that the Bankruptcy Court had exclusive jurisdiction of Public Leasing and its property; that the Bank's counterclaim for interpleader was not a suit to enforce a lien upon the property of Public Leasing; and that the determination of any dispute between Texaco and Public Leasing must necessarily involve a determination as to whether Texaco's claim was a voidable preferential transfer. Public Leasing's motion specifically pleaded the possible prejudice to the rights of other unsecured creditors if it should be interpleaded in this action independent of the Bankruptcy Court.

On August 26, 1971, the Bankruptcy Court confirmed the Chapter XI arrangement whereby all unsecured creditors of Public Leasing would receive preferred stock at the rate of one share of stock for each $3 of claim. Texaco received 25,764 shares through this arrangement, but in accepting the stock certificate Texaco acknowledged upon receipt that it intended to preserve its rights against the Bank. It made the following notation on ceipt of the certificate:

"By accepting this certificate, Texaco does not waive, release or compromise

any claim it may assert in Case Civ. 71–268, now pending in the U. S. District Court for the Western District of Oklahoma. To the extent of any moneys recovered by Texaco in said lawsuit, Texaco will surrender and return the shares represented by this certificate on the basis of one share for each $3 so recovered by Texaco."

Thereafter on October 19, 1971, the Bank filed its Motion for Summary Judgment with accompanying affidavit, contending that its liability on the cashier's check had been discharged by reason of the allowance of Texaco's claim in the bankruptcy proceeding accompanied by Texaco's receipt and acceptance of the stock distributed pursuant to the plan for arrangement. Relying on the legal contentions presented by the Bank, the Court, Judge Stephen S. Chandler presiding, on October 30th granted the motion and dismissed Texaco's action. The order contained no findings of fact or conclusions of law. The trial judge, sitting in diversity, apparently agreed that under applicable law Texaco was put to an election of remedies and that by pursuing its claim against Public Leasing in the Chapter XI arrangement it was precluded from a recovery against the Bank.

■ Congress in enacting the Bankruptcy Act recognized the clear mandate of the United States Constitution by which it was delegated the power to enact "uniform Laws on the subject of Bankruptcies throughout the United States." U.S.Const. art. 1, § 8. This power of the Congress to legislate on the subject of bankruptcies is rendered superior to all state laws upon the subject and it may be so exercised as to exclude all conflicting proceedings in state or federal courts. Marine Harbor Properties v. Manufacturers Trust Co., 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 64 (1942) ; Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940).

The Bankruptcy Act defines courts of bankruptcy as United States District Courts and the District Court of the territories and possessions. It specifically vests them with their respective territorial limits "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction" in proceedings under the Act and for purposes stated in the Act. 11 U.S.C. § 11. National Mutual Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949) ; O'Dell v. United States, 326 F.2d 451 (10th Cir. 1964). An additional provision for jurisdiction is found in the Judicial Code which provides that the district courts shall have original jurisdiction exclusive of the courts of the states, of all matters and proceedings in bankruptcy. Hull v. Burr, 234 U.S. 712, 34 S.Ct. 892, 58 L. Ed. 1557 (1914). By virtue of the Act, the Bankruptcy Court assumes "exclusive jurisdiction of the debtor and his property, wherever located." 11 U.S.C. § 711.

■ One of the primary purposes of the Bankruptcy Act is to place the property of the bankrupt under the control of one court for distribution among his creditors without preference. Young v. Higbee Co., 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890 (1945) ; Imperial Assur. Co. v. Livingston, 49 F.2d 745 (8th Cir. 1931). Accordingly, in matters involving the adjudication of persons bankrupt, including the allowance and disallowance of claims, the collection and distribution of the property of the bankrupt and the determination of controversies in relation thereto, the paramount jurisdiction of the federal bankruptcy court has been invoked as provided by the Act. City and County of Denver v. Warner, 169 F. 2d 508 (10th Cir. 1948) ; Evarts v. Eloy Gin Corp., 204 F.2d 712 (9th Cir. 1953).

■ To protect its jurisdiction over the estate of the bankrupt in its custody there is no question but that it may enjoin suits in another federal court. Steelman v. All Continent Corp., 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937). 11 U.S.C. § 714 specifically authorizes the Bankruptcy Court to enjoin suits against the debtor. The specific purpose of this statute is to make reasonably cer-

tain that third parties do not take possession of property before it is determined that the property belongs to them by proper order of the Bankruptcy Court. United States v. Mel's Lockers, Inc., 346 F.2d 168 (10th Cir. 1965).

When the foregoing principles of law are applied to the facts in this case, the order granting summary judgment in favor of the Bank cannot be sustained. Public Leasing invoked the jurisdiction of the Bankruptcy Court by filing its petition for an arrangement under Chapter XI of the Bankruptcy Act. Contemporaneously with that filing, the Bankruptcy Court issued its order staying all suits involving the property of the debtor, Public Leasing. The interpleading of Public Leasing in our instant suit should have been stayed.

Inherent in the determination as to the rights of all parties as to the disputed $23,230.10 is the question as to whether the original action of Public Leasing in issuing its check to Texaco constituted a preference within the meaning of the Bankruptcy Act. 11 U.S.C. § 96(a) (1) deals with the question of preferred creditors. To establish a preference under this section, it must appear that the bankrupt transferred property to a creditor within four months prior to the filing of a proceeding in bankruptcy, that it was insolvent at the time, that enforcement of the transfer would enable the transferee to secure a greater percentage of its claim than any other creditors of the same class, and that it knew or had reasonable cause to believe such fact. Pirie v. Chicago Title and Trust Company, 182 U.S. 438, 21 S.Ct. 906, 45 L.Ed. 1171 (1901). The essence of a preference is that it depletes the bankrupt's estate which should equitably be available to all unsecured creditors. Virginia National Bank v. Woodson, 329 F.2d 836 (4th Cir. 1964). Any determination as to who would be entitled to the moneys on deposit and the tires pledged to the Bank, admittedly assets of the bankrupt, would necessarily involve a legal determination as to whether Texaco is entitled to a full satisfaction of its claim, as opposed to other creditors, and the determination of whether the Texaco claim in bankruptcy is based on a voidable preferential transfer. Such determination is exclusively within the jurisdiction of the Bankruptcy Court. The trial court erred in all proceedings following the filing of the Bankruptcy Court's mandate staying all actions commenced or continuing against the debtor, Public Leasing. This necessarily follows herein since the Bankruptcy Court had original and exclusive jurisdiction which must be employed to preclude conflicting proceedings in other state or federal courts. We hold that the trial court should not have allowed the interpleader nor should it have held that Texaco was put to an election of remedies. The Court should have stayed the proceedings between Texaco and the Bank after the Bankruptcy Court entered its injunction and stay order. Since the bankruptcy proceedings were exclusive and Texaco openly indicated that it would return an equivalent amount of shares if it recovered on the cashier's check, the rights of other unsecured creditors of Public Leasing are involved. An independent action by Texaco for recovery from the Bank for its own negligence may not be precluded solely because of the intermittent bankruptcy of Public Leasing and a determination by the Bankruptcy Court on the voidable preference issue.

The record here reflects that the debtor, Public Leasing, has been abrogated of possession of the company and its assets in light of the fact that a trustee has been appointed whereby a reorganization is pending under Chapter X of the Bankruptcy Act. We direct that all proceedings in the instant case be stayed and that the summary judgment order be set aside and that this cause be remanded for further proceedings only when certain determinations exclusive to the Bankruptcy Court have been finally resolved.

In enacting Chapter X, Congress intended that the trustee assume a vital position in reorganization in order to afford greater protection to creditors.

Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed. 2d 195 (1972). For the guidance of the Court and the parties we observe that the trustee may proceed for a determination in the Bankruptcy Court whether: (a) the Public Leasing check to Texaco constituted a preferential transfer, and (b) whether the Security Agreement executed by Public Leasing in favor of the Bank is valid and binding in that it, too, was entered into following Public Leasing's notice of "stop payment" order to the Bank, and (c) whether the "hold harmless" agreement constitutes a voidable preference in that it was entered at a time when the Bank knew that Public Leasing was insolvent or unable to pay its debts as they matured.

We reverse the order granting summary judgment and remand to the Trial Court with instructions to stay all proceedings herein until the Bankruptcy Court has rendered determinations on the issues exclusive to its jurisdiction, some of which have been hereinabove suggested, and when such determinations are finally resolved, to proceed in a manner consistent with them.