## In re NORTHEAST CORPORATION.
### No. 73-BK-133-C.

United States District Court,
W. D. Virginia,
Charlottesville Division.

Aug. 9, 1974.

Robert M. Musselman, Charlottesville, Va., for petitioner.

Colin J. S. Thomas, Jr., Staunton, Va., for defendant.

## OPINION

TURK, Chief Judge.

This case is before the court pursuant to certain "Exceptions to the Report of the Special Master" filed by Thomas J. Chandler, Jr., Charles W. Hurt and Pliney M. Cropp, petitioners under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq. and creditors of the bankrupt Northeast Corporation.

The history of this case leading to organization of the bankrupt Northeast Corporation and its efforts to acquire and develop a tract of land known as the Harnesberger Property are set forth in the Report of the Special Master and need not be repeated here. The court is cognizant of the factual errors in the Report and has thoroughly considered these in reviewing the conclusions of the Special Master.

The issue before the Special Master upon reference and now before this court is that of whether or not the petition for corporate reorganization under Chapter X was filed in good faith under § 146 of the Bankruptcy Act, 11 U.S.C. § 546. The Special Master concluded that the petition had not been filed in good faith, but rather that the statute (Chapter X) had been used to restrain creditors while efforts were undertaken to obtain funds. In this respect, he noted that the first and second lien debts, totalling $530,000, have been in default since July 1973; that such default continued until foreclosure was finally undertaken [in November, 1973]; that the bankrupt was unable to restrain the foreclosure in the state court due to its failure to post an indemnity bond in the amount of $300,000; that bankrupt then, on the day before foreclosure, filed a petition in bankruptcy; and although the foreclosure sale was held on December 1, 1973, this became subject to approval of the bankruptcy court.

The trustee thereafter filed a petition that the foreclosure be approved, which

was treated as a petition for abandonment, and a hearing was held on February 6, 1974. At this hearing, the trustee submitted a written appraisal of the Harnesberger Property which valued it at $350,000, whereas at the foreclosure sale on December 1, 1973 it had brought a price of $335,000. The trustee recommended abandonment of the property as an asset of the bankruptcy estate.[1] At this juncture, counsel for the bankrupt filed the petition for corporate reorganization under Chapter X.

The bankrupt's petition for corporate reorganization was accordingly submitted to this court pursuant to § 141 of the Bankruptcy Act, 11 U.S.C. § 541, and this court designated the Honorable Phillip Hickson, Bankruptcy Judge, as Special Master to investigate and report to the court as to whether or not the bankrupt's petition was filed in good faith pursuant to the provisions of § 146 of the Bankruptcy Act, 11 U.S.C. § 546.

A hearing on the petition was held before the Special Master on May 29, 1974. At this hearing, the bankrupt submitted another appraisal of the property, and the appraiser testified at the hearing that the present market value of the subject property was $800,000. Also submitted was evidence concerning the availability of sewerage for the property by mid-1975 and evidence of the present and potential zoning of the property. The Special Master concluded that the initial appraisal of $350,000 was realistic. He considered that the valuation of $800,000 was contingent on laying hard surfaced roads to satisfy the zoning requirement, and providing water service, fire hydrants and like improvements; he also pointed out that the $800,000 appraisal states that the highest and best use for 195.4 acres of the property is development into one-half acre residential lots and that this would require a sewerage connection fee of $450 per lot. He

further noted that no evidence had been introduced of any capital funds available to the bankrupt other than from the sale of the subject property.

The bankrupt strenuously objects to the Special Master's conclusion regarding the present value of the property. The bankrupt argues that the report fails to reflect the fact that under the Master Plan for Augusta County the property is designated not only for single family, but also multi-family and commercial development; and that even under present zoning approximately 7.4 acres of the property are zoned multi-family and 9.4 acres are zoned for business. It is also pointed out that the $800,000 appraisal states that the property is more suitable for Planned Unit Development, and the evidence reflects that the property could qualify for such use. The bankrupt also notes that several sales of portions of the property have been made for a price in excess of $4,500 per acre.

From a consideration of the bankrupt's exceptions and the evidence presented below, the court perceives how the subject property could be appraised at a present market value of $800,000 in light of its potential for development. On the other hand, the court even more readily perceives that in view of the cost of development and the time required before realizing on such an investment, the appraisal of $350,000 is perhaps more realistic. This valuation is of course, supported by the fact that at the foreclosure sale, which was widely advertised, the property brought only $335,000.

Aside from the appraisal of the property, the court agrees with the Special Master that the facts and circumstances surrounding this case bring it within the third negative test in § 146 of the Bankruptcy Act, 11 U.S.C. § 546, for determining when a petition under

---

[1]. The trustee also stated in his report that the appraisal of $350,000 and the high bid at the auction sale of $335,000 were so vastly at variance with the price paid for the land by the purchasers for the bankrupt ($750,000), that he was dubious of abandonment and suggested another appraisal.

Chapter X is not filed in good faith. This section states:

> "Without limiting the generality of the meaning of the term 'good faith', a petition shall be deemed not to be filed in good faith if—
>
> . . . . . .
>
> (3) it is unreasonable to expect that a plan of reorganization can be effected."

In the first place, the court notes that it has now been a year since the bankrupt defaulted and during this time no plan has been proposed to salvage the corporation. In addition, it is certainly relevant that of the total secured debt against the bankrupt of $567,000, $530,000 is held by the first and second lienors who strenuously oppose any further delay in foreclosure and have indicated that they will not approve any Chapter X reorganization. The remainder of the secured debt appears to be held by petitioners Cropp and Hurt as the result of commissions from sales of the land.[2] Thus even if the bankrupt could, at this late date, propose a plan for reorganization, it is clear that creditors holding two-thirds of the amount of secured debt would not accept the plan and there could thus be no confirmation under section 179 of the Act, 11 U.S.C. § 579.

Recognizing the obstacle caused by section 179, the bankrupt argues that this section also provides in conjunction with section 174, 11 U.S.C. § 574, and section 216(7) and (8), 11 U.S.C. § 616 (7) and (8), that such approval is not required where a plan specifically provides for the protection of a class of creditors not approving the plan by a ⅔ majority. Although such an approach might be reasonable in a case involving several classes of creditors with strong support for reorganization from one or more classes, or at the very least other indications of reasonable prospects for a workable plan being formulated, the court does not believe that the theoretical possibility that this alternative might be utilized enhances the prospects for success and hence petitioner's good faith in the case at bar. The Northeast Corporation has a single asset, an undeveloped piece of land; the greater part of the equity in this land is held by creditors who strongly oppose a Chapter X reorganization; and for the past year, the corporation has been in default to these secured creditors, yet during this period no feasible plan of refinancing or restructuring the debt has been proposed. In view of the serious financial condition of the corporation and the opposition of the secured creditors to further delay occasioned by attempts at reorganization, the court completely agrees with the Special Master that it is unreasonable to expect a plan of reorganization to be effected.

■ Both sides have cited numerous cases in support of their respective positions, and upon review of these authorities, the court is confirmed in its conclusion that the petition should be denied. It is clear that each case turns on its own facts and circumstances with no single factor being dispositive of the issue of good faith. However, the court believes that Janaf Shopping Center, Inc. v. Chase Manhattan Bank, 282 F.2d 211 (4th Cir. 1960); Leas v. Courtney Company, 261 F.2d 13 (4th Cir. 1958), and Arey and Russell Lumber Co. v. American National Bank and Trust Co., 201 F.2d 508 (4th Cir. 1953) are factually similar to the case at bar and supportive of the court's conclusion. On the other hand, the decision in Wachovia Bank and Trust Co. v. Dameron, 406 F. 2d 803 (4th Cir. 1969) is readily distinguishable on its facts. The court there noted that the note in question was not in default and the corporation's apartment project had been completed and was 100% rented with good prospects for future income production, thus indi-

---

**2.** The other petitioner, Thomas Chandler, has apparently not invested any money in the corporation, but was given all of the stock in the corporation plus $1000. He appears as an unsecured creditor for the amount of $2,277.80 according to petitioners.

cating reasonable prospects for a workable plan. Clearly, petitioners cannot make such a showing in the case at bar.

On the basis of its review of the evidence and for the reasons stated, it is the considered opinion of this court that it is unreasonable to expect a plan of reorganization to be effected. Therefore, the court concludes that the petition for reorganization under Chapter X of the Bankruptcy Act was not filed in good faith and is accordingly dismissed pursuant to section 141 of the Act. The case is remanded to the Bankruptcy Court for further proceedings on the original bankruptcy petition filed by Northeast Corporation.